United States Court of Appeals,

Fifth Circuit.

No. 91-6035.

HARVEY CONSTRUCTION COMPANY, Plaintiff-Appellant,

v.

ROBERTSON-CECO CORPORATION, Defendant-Appellee.

Jan. 3, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before JOHNSON, GARWOOD, and WIENER, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Harvey Construction Company (Harvey) appeals the district court's order dismissing its complaint pursuant to 28 U.S.C. § 1359 for want of subject matter jurisdiction. Harvey also appeals the denial of its motions for summary judgment and for default judgment and contests the district court's grant of certain discovery motions of defendant-appellee Robertson-Ceco Corporation (Robertson). We reverse and remand the jurisdictional issue. We decline to address the remaining issues.

**Facts and Proceedings Below**

In March 1978, Harvey became the general contractor for the construction of the 3D/International Office Tower, a multi-story office building in Houston (the 3D building). The owners of the 3D building were Gerald Hines and 3D Tower, Limited, a Texas limited partnership, one of the partners of which was Gerald D. Hines Interests.[1] Gerald Hines is the father of Jeff Hines, one of Harvey's directors and its current sole shareholder.

In August 1978, Harvey subcontracted with Robertson,[2] to design, construct, and install the 3D building's curtain wall system, the nonstructural stainless steel and glass exterior "skin" of the

---

[1] We refer to the owners of the 3D building collectively as 3DT.

[2] Harvey actually subcontracted with Cupples Products Division, which is now a part of Robertson-Ceco Corporation. We include Cupples in our references to Robertson.

building. The subcontract and the general contract were completed on time, and the 3D building was occupied by June 1979. The $2,425,800.00 subcontract price was timely paid.

In 1987, 3DT commenced negotiations to sell the building to a third party. At issue in these negotiations were defects in the exterior curtain constructed by Robertson. Some of the stainless steel panels were "buckling or delaminating." Robertson declined to take responsibility for these defects as the warranty for its work had expired. 3DT refused Robertson's offer to construct, for new consideration, an overlay to conceal the damage.

In June 1989, 3DT sued Harvey, Robertson, and Hexcel Corporation (Hexcel), one of Robertson's suppliers of materials, in state court in Houston. The damages alleged in this suit arose out of the work covered by Robertson's subcontract.

The subcontract between Harvey and Robertson contained a provision in which Robertson agreed to indemnify and/or defend Harvey for claims arising out of its subcontract work.[3] On September 5, 1990, Harvey sent a written demand to Robertson for indemnification in the suit by 3DT.[4] On September 21, 1990, Robertson sent a reply in which it stated that it could not then agree to indemnify Harvey but would reassess the request at a later time. Robertson claims that it was unsure about the extent of the indemnity request and was waiting for Harvey to clarify its request. Harvey did not file a cross-action for indemnification in 3DT's state court suit, nor did Robertson ever offer to indemnify or to defend Harvey in the 3DT suit.

On January 22, 1991, in the state court suit 3DT dismissed without prejudice all its claims against Robertson and Hexcel, without notice to either, and entered into a settlement agreement and an agreed judgment with Harvey whereby Harvey assumed liability for $3,950,000.00 for breach of contract. As part of the settlement agreement, 3DT assigned to Harvey all of its claims against Robertson arising out of 3DT's suit. On January 29, Harvey brought this action against Robertson

---

[3] In its brief on appeal, Robertson distinguishes between its duties to Harvey arising out of "operations" and those arising out of "performance." Robertson interprets the subcontract to limit its duty to defend to claims arising out of its operations.

[4] Robertson emphasizes in its brief that this demand letter did not contain a request that Robertson defend Harvey in the suit by 3DT but only that it indemnify Harvey for any resultant liability.

in the United States District Court for the Southern District of Texas on the basis of diversity of citizenship, claiming damages for breach of contract, negligence, fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act.

On January 30, one day after Harvey brought this action, Robertson filed a declaratory judgment action against Harvey in the Eastern District of Missouri, also on the jurisdictional basis of diversity of citizenship.

Robertson's answer in the instant suit was due on March 4; Robertson on February 27 requested an extension of time to answer, and it filed its answer on March 15. Also on March 15, Harvey filed a motion for default judgment. At a hearing held on March 21, the district court orally granted the request for an extension of the answer date and denied the motion for default judgment.

Later in March, Harvey moved for partial summary judgment on the issue of indemnity. The district court denied this motion in a speaking opinion on April 25. In May, Robertson filed its motions to dismiss for want of subject matter jurisdiction pursuant to 28 U.S.C. § 1359 and to compel discovery into the settlement discussions held between Harvey and 3DT.

In August 1991, the district court orally granted Robertson's motion to compel discovery. It then dismissed Harvey's complaint for want of subject matter jurisdiction. Harvey filed a timely notice of appeal; it appeals the denial of its motions for summary judgment and for default judgment and the grant of Robertson's discovery orders in conjunction with the final order of dismissal.

**Discussion**

*I. Jurisdictional Issue*

Robertson argues that diversity subject matter jurisdiction does not exist in this case because the settlement transactions between 3DT and Harvey, both domiciled in Texas, were an attempt to create federal jurisdiction where it was not previously available. The district court ruled as a matter of law that Harvey achieved diversity jurisdiction collusively and dismissed the action pursuant to 28 U.S.C. § 1359.[5] The legal basis for this ruling is subject to review *de novo.*

---

[5]28 U.S.C. § 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Harvey, as the party seeking to invoke jurisdiction, has the burden of proving the facts necessary to sustain jurisdiction. *Green v. Hale,* 433 F.2d 324, 329 (5th Cir.1970). We review the factual findings supporting the dismissal under the clearly erroneous standard. *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

For purposes of deciding the issue of jurisdiction, we distinguish between Harvey's indemnity claim against Robertson and the claims that 3DT assigned to Harvey as part of the settlement agreement in the state court action. In return for assigning its claims against Robertson to Harvey, 3DT retained approximately a 957 interest in any recovery that Harvey might obtain on those claims.[6] 3DT had no interest in Harvey's indemnity claim.

In addressing the jurisdictional issue, both Robertson and the district court erroneously focused on the alleged fraud and collusion in the settlement agreement.[7] Focusing instead on the domicile of the parties, it is clear that diversity jurisdiction exists for claims between Harvey and Robertson because they are citizens of different states.[8] 28 U.S.C. § 1332(a). Robertson is a Delaware corporation with its principal place of business in Pennsylvania. Harvey is a Texas corporation with its principal place of business in Houston.

Although we note, without so finding, that there may be some truth to the allegations of collusion, we cannot sustain the jurisdictional dismissal of the indemnity claim. Whether the settlement was collusive or not goes only to the merits of the action and does not affect the

---

[6]Pursuant to the terms of the agreement, Harvey would keep five percent of the recovery *or* its attorney's fees, whichever was greater.

[7]The district court stated: "It is clear that 3DT and Harvey Construction are seriously related companies with parallel interests who excluded these defendants from the negotiating process and came up with a system by which they could be placed in this forum where they could not have otherwise been placed...."

Robertson cites the connections between Harvey and the 3D building ownership to support the district court's factual findings. The officers and directors of Harvey are Jeff Hines (director only), John Greenberger, and Ken Hardin. Greenberger and Hardin are also officers and employees of the Hines Interests Limited Partnership, which is owned entirely by Gerald and Jeff Hines. At the time of the general contract, Gerald Hines, Jeff's father, both owned 897 of Harvey and was one of the owners of the 3D building.

[8]Robertson does not contend that diversity does not exist between it and Harvey. Indeed, it based its declaratory judgment action in Missouri on diversity grounds.

jurisdiction of the district court.[9] We hold that the district court erred in dismissing Harvey's indemnity claim for want of subject matter jurisdiction.

We are unable, on the record before us, to rule on the dismissal of the claims assigned by 3DT to Harvey because there is no evidence of the diversity status of 3DT and Robertson. 3DT is a Texas limited partnership. The Supreme Court has held that a district court must consider the citizenship of limited partners for purposes of establishing diversity jurisdiction. *Carden v. Arkoma Assoc.,* 494 U.S. 185, 187-196, 110 S.Ct. 1015, 1017-1021, 108 L.Ed.2d 157 (1990). We must remand these claims for a finding by the district court as to the citizenship of 3DT's limited partners.

On remand, if the district court determines that diversity exists between 3DT and Robertson, it must find that the assignment of 3DT's claims to Harvey did not create collusive *jurisdiction* and thus the parties may proceed to the merits of the claims.[10] If, however, 3DT and Robertson are not diverse, no federal jurisdiction for the assigned claims exists. 28 U.S.C. § 1359; *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).[11]

---

[9]Robertson has also raised the issue of collusion as a defense on the merits. It argues that 3DT and Harvey entered into the settlement agreement, with the assignment of claims to Harvey, in order to avoid the defenses Robertson could have asserted against 3DT in the state court action.

[10]The fact that the alleged collusion stemmed from the state court action in which there was no basis for federal jurisdiction because 3DT sued both Harvey and Robertson has no effect on the district court's jurisdiction or on the merits. 3DT could have created a collusive settlement without instigating judicial procedures or by suing only Harvey.

[11]*Kramer v. Caribbean Mills, Inc.* is the leading case discussing § 1359 in connection with diversity jurisdiction. In *Kramer,* a Panamanian corporation assigned its rights arising out of a contract dispute with a Haitian corporation to an attorney in Texas. Consideration for the assignment was $1.00. In an agreement dated the same day, the attorney promised to pay the Panamanian corporation 95% of the net recovery on the assigned cause of action. The Supreme Court affirmed a holding of this Court dismissing the action as collusively brought. The Court found that the assignment had been made for the purposes of collection; indeed, the attorney admitted that diversity jurisdiction was a primary motivating factor behind the assignment. *Kramer,* 394 U.S. at 827, 828, 89 S.Ct. at 1490.

Robertson claims that the interest in litigation retained by 3DT is proof of collusion. Harvey's "payment" for pursuing this action is five percent of the recovery on 3DT's claims *or* its attorney's fees. Thus 3DT would receive approximately 95% of the recovery on its claims, the percentage found collusive in *Kramer.* Harvey is acting as a collection agent for 3DT's claims, and certainly the district court's implied finding to this effect is not clearly erroneous. Accordingly, if 3DT and Robertson are not diverse, *Kramer* precludes jurisdiction over the assigned 3DT claims.

*II. Interlocutory Rulings*

Harvey requests that we address the propriety of the district court's denial of Harvey's motions for default and summary judgment and the district court's discovery rulings in favor of Robertson. These are interlocutory orders that are not appealable absent a final judgment.[12] *See* 28 U.S.C. § 1292(a). Because we remand the final order of dismissal to the district court for a determination of the diversity status of 3DT, and for a determination on the merits of the indemnity claim, we will not review the remaining issues.

## Conclusion

We reverse the order of the district court dismissing the action for want of subject matter jurisdiction. We remand Harvey's indemnity claim for a determination on the merits. We remand the assigned claims of 3DT against Robertson for a finding on the diversity status of these two parties and ruling accordingly on jurisdiction respecting those claims. We do not address the interlocutory issues.

REVERSED AND REMANDED.

---

[12]We note that the district court generally has the right to decline to summarily resolve a case before it unless the defendant is entitled to absolute or qualified immunity. *See Veillon v. Exploration Services,* 876 F.2d 1197, 1200 (5th Cir.1989); *Marcus v. St. Paul Fire & Marine Ins.,* 651 F.2d 379, 382 (5th Cir.1981).