IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-40281
Summary Calendar
_____


ELIZABETH ELIZONDO,

                                        Plaintiff-Counter
                                        Defendant-Appellee,

     versus

THE PILGRIM'S GROUP, INC.;
D. L. TOURS, INC., TEXAS,

                                        Defendants-Counter
                                        Claimants-Appellants.


_____

Appeal from the United States District Court for the
Southern District of Texas
(B-95-CV-162)
_____
October 1, 1996

Before GARWOOD, JOLLY and DENNIS, Circuit Judges.[*]

GARWOOD, Circuit Judge:

     Plaintiff tourist sued two Arizona travel service corporations

in state court for unspecified damages arising from injuries

sustained in a bus accident in Spain.  The defendant corporations

removed to federal court, alleging that the amount in controversy

exceeded $50,000 excluding interest and costs.  The corporations

[*]     Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

also filed a motion to transfer the case to Arizona. Plaintiff requested a remand to state court, stating that her claim involved no federal question and that her damages were less than the jurisdictional amount. The parties agreed to a proposed order for remand and submitted it to the magistrate judge. While the motions to remand and transfer were pending, the magistrate judge held a pretrial conference at which counsel for the defendants failed to appear. The magistrate judge denied both the remand and transfer motions and entered its scheduling order, setting separate dates for the final pretrial conference, jury selection, and trial. Counsel for the defendants subsequently failed to appear at the final pretrial conference. Upon a motion by the plaintiff, the magistrate judge entered judgment for plaintiff in the amount of $75,000. The defendant corporations bring this appeal.

## Facts and Proceedings Below

On August 3, 1995, plaintiff Elizabeth Elizondo[1] (Elizondo), a resident and citizen of Texas, filed suit in Texas state court against The Pilgrim's Group, Inc., and D.L. Tours, Inc. (collectively Pilgrims), both Arizona corporations. Elizondo sought damages arising from a bus accident that occurred in Spain

---

[1] At various stages of these proceedings, papers filed with the court, including papers filed by counsel for plaintiff, have alternately spelled plaintiff's name "Elizando" and "Elizondo." *See, e.g.*, Plaintiff's Original Complaint (Elizando); Plaintiff's Motion To Remand (Elizondo). Final judgment was entered for "Elizondo."

2

while she was on a tour of Spanish religious sites arranged by Pilgrims. Elizondo's complaint alleged that Pilgrims held themselves out to be experts in world travel arrangements. Elizondo alleged that she purchased a tour package arranged by Pilgrims that was to include visits to sites in Spain and France with transportation provided by various entities selected by Pilgrims. According to Elizondo, she was "seriously injured" when a tour bus on which she was a passenger tipped over. Elizondo further alleged that the bus accident, which occurred when the tour group was en route from Barcelona to Lourdes, killed several tour participants and injured many others, including Elizondo. According to Elizondo, Pilgrims did not "carefully select tour elements" and this failure was evidenced by the "inebriated, grossly negligent driver" of the tour bus. Elizondo sought unspecified damages[2] for breach of contract, violations of the Texas Deceptive Trade Practices Act (DTPA), personal injuries and medical expenses, mental anguish, and lost employment time. In addition, Elizondo sought punitive damages, DTPA penalties, attorneys' fees, and court costs.

On October 2, 1995, Pilgrims removed the case to the United States District Court for the Southern District of Texas. The notice of removal alleged that the defendants were both Arizona

---

[2] Texas law requires that complaints seeking unliquidated damages not state a specific amount. Tex. R. Civ. P. 47(b); *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986).

3

corporations with their principal places of business in that state. The notice of removal further alleged that the amount in controversy, excluding costs and interest, exceeded $50,000, so that the requirements for diversity of citizenship jurisdiction were met. *See* 28 U.S.C. §§ 1332, 1441. The parties subsequently consented to a trial by magistrate judge and set the date for the initial pretrial conference.

On October 30, 1995, defendants filed a motion to transfer the case to the United States District Court for the District of Arizona on the grounds that Arizona was more convenient for both the parties and the witnesses and that Arizona was the judicial district with the most significant ties to the litigation. *See* 28 U.S.C. § 1404(a).

On November 8, 1995, while defendants' motion to transfer was still pending, Elizondo filed a motion to remand the case to state court. Elizondo alleged that she had filed her complaint in a state court of limited jurisdiction "because of the small amount of money involved."[3] Elizondo further alleged that the case involved "damages of less than $50,000," but did not otherwise alter her original complaint. The next day counsel for defendants notified the court that defendants would submit an "Agreed Order To Remand." Another pretrial conference was set for November 21, 1995.

---

[3]   The state court had jurisdiction up to $100,000. Tex. Govt. Code § 25.0003(c)(1).

4

Counsel for defendants failed to appear at the November 21 pretrial conference. The magistrate judge signed the scheduling order which was in turn mailed to counsel for both parties. The scheduling order, in addition to setting deadlines for discovery and motions, set the final pretrial settlement conference date for January 25, 1996; set the final pretrial conference date for February 1, 1996; set jury selection date for February 2, 1996; and set jury trial date for February 12, 1996. The transfer and remand motions were denied on January 4, 1996.

Counsel for defendants again failed to appear at the January 25 pretrial settlement conference. The magistrate judge instructed counsel for Elizondo to send a copy of the Joint Pretrial Order to counsel for defendants for his participation. On February 1, 1996, the pretrial order was received by the court.

Once again, counsel for defendants failed to appear at the February 1 Final Pretrial Conference. According to the record,[4] counsel for Elizondo initially moved for a default judgment, then chose to waive her right to a jury trial and proceeded to present the case to the magistrate judge on the merits, calling Elizondo as a witness and presenting three documentary exhibits to the court. The magistrate judge ordered final judgment for Elizondo on February 1, 1996, in the amount of $75,000, plus costs and post-judgment interest. Final judgment was entered on February 8, 1996.

---

[4]     No transcript was made of the February 1 proceedings.

On February 14, 1996, defendants moved for a new trial, which was subsequently denied.

Defendants appeal the denial of their motion to transfer, the denial of the proposed order to remand, and the magistrate judge's decision to conduct the trial on the merits prior to the scheduled date.

**Discussion**

I.

The preliminary question presented is whether the district court should have granted the plaintiff's motion to remand the case to Texas state court because the amount in controversy was below the threshold amount required to support diversity jurisdiction under 28 U.S.C. 1332(b). The legal basis for the magistrate judge's implicit finding of jurisdiction under 28 U.S.C. § 1332(b) is subject to *de novo* review. *Harvey Const. Co. v. Robertson-Ceco Corp.*, 10 F.3d 300, 303 (5th Cir. 1994). Although ordinarily the removing party bears the burden of establishing the basis for federal jurisdiction, *see Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v. Dow Quimica S.A.*, 988 F.2d 559, 563 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041, 114 S.Ct. 685 (1994), the district court also "has a duty to make the inquiries necessary to establish its own jurisdiction," *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990). Given the procedural posture of this case, it is the

6

defendant removers who, as losers below, object to the denial of the motion to remand.

A.

Resolution of this issue is aided by this Court's decisions in *ANPAC*, 988 F.2d 559, and *Marcel v. Pool Co.*, 5 F.3d 81 (5th Cir. 1993). In *ANPAC*, as here, Texas law prohibited the original complaint from specifying the precise amount of damages. *ANPAC*, 5 F.3d at 562 & n.1. The *ANPAC* defendant removed, asserting only the parties' citizenship and that the amount in controversy exceeded $50,000. *Id*. The *ANPAC* plaintiffs filed a motion to remand, attaching an affidavit from their attorney stating that there was no individual plaintiff or claimant who had suffered a loss greater than $50,000. *Id*. This Court reversed the district court's denial of the motion to remand, noting that the alleged injuries were unlikely to meet the jurisdictional amount.[5] *Id*.

This Court's *ANPAC* decision reiterated the test set forth in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590 (1938):

> "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring

---

[5] The alleged personal injuries were "skin rashes" and the alleged economic injuries to the individual Colombian fisherman were extremely unlikely to have amounted to the required $50,000. *Id*. at 565.

7

jurisdiction, the suit will be dismissed."

The *ANPAC* court acknowledged that "a plaintiff may not defeat removal by subsequently *changing* his damage request[] because post-removal events cannot deprive a court of jurisdiction once it has attached," but held that the affidavit supplied by the plaintiffs' attorney merely clarified the original complaint that, because of the Texas rule, was previously ambiguous as to the jurisdictional amount. *ANPAC*, 988 F.2d at 565 (emphasis in original); *St. Paul Mercury*, 303 U.S. at 295, 58 S.Ct. at 593 ("[S]ubsequent reduction of the amount claimed cannot oust the district court's jurisdiction.").

The removing party in *ANPAC* also failed to state facts in support of the jurisdictional amount in its notice of removal. *ANPAC*, 988 F.2d at 565 (noting that the notice of removal "merely states, without any elaboration, that 'the matter in controversy exceeds $50,000 exclusive of interest and costs'"). Finally, the *ANPAC* court made the following conclusion:

> "[A]t least where the following circumstances are present, [the removing party's] burden has not been met: (1) the complaint did not specify an amount of damages, and it was not otherwise facially apparent that the damages sought or incurred were likely above $50,000; (2) the defendants offered only a conclusory statement in their notice of removal that was not based on direct knowledge about the plaintiffs' claims; and (3) the plaintiffs timely contested removal with a sworn, unrebutted affidavit indicating that the requisite amount in controversy was not present."

*Id*. at 566.

8

In *Marcel*, this Court revisited the issue raised by *ANPAC*. Observing the factual distinctions between the two cases, the *Marcel* court considered the conditions set forth in *ANPAC*. First, the court noted:

> "While in the present case, as in *ANPAC*, the complaint did not, and indeed, could not, specify an amount of damages, it *is* facially apparent here that, based upon the complaint and viewing the case as of the time of removal, the damages easily could exceed $50,000. In fact, any one of several injuries alleged—not to mention the requested exemplary damages—alone could have topped that amount . . . ."

*Marcel*, 5 F.3d at 84 (emphasis in original). Second, the court observed that, unlike the defendant in *ANPAC*, the defendant in *Marcel* buttressed its notice of removal by listing the types of injury plaintiff claimed. Although the facts in the notice of removal were not detailed, the defendant's response to the plaintiff's motion to remand provided a more detailed basis from which the court was able to assess whether the claim met the jurisdictional threshold. *Id*. at 84-85. Finally, as in *ANPAC*, the plaintiff in *Marcel* offered to stipulate that the claim was for less than the jurisdictional amount, but the court considered the stipulation to be rebutted by other evidence presented. *Id*. at 85.

B.

*St. Paul Mercury*, *ANPAC*, and *Marcel* govern the result in this case. Under the rationale of these cases, it is apparent that the magistrate judge properly denied Elizondo's motion to remand. As

9

in *Marcel*, an examination of the conditions set forth in *ANPAC* leads to the conclusion that none of them are sufficiently present to require a remand to state court. First, although Elizondo's original complaint contained no specific amount of damages, her allegations could easily have exceeded the jurisdictional threshold. Elizondo's complaint was not limited to expectation damages for breach of contract regarding her unrefunded tour package, but rather included claims for her "serious injur[ies]," attorneys' fees, DTPA penalties, lost employment time, mental anguish, medical expenses, and, significantly, punitive damages. The factual context of Elizondo's claims involved an allegedly inebriated tour bus driver whose gross negligence caused several deaths and multiple injuries. As in *Marcel*, some of these claims, alone, could have reached the jurisdictional threshold.

*ANPAC*'s second condition is likewise unsatisfied. Although the defendants' notice of removal recited the general jurisdictional amount, both Elizondo's original complaint and the defendants' subsequent transfer motion and accompanying affidavits provided sufficient detail for the magistrate judge to conclude the claim presented a potential for recovery far in excess of $50,000.

Finally, *ANPAC*'s third condition—an unrebutted affidavit indicating an insufficient amount in controversy—cannot be said to be present here. Although the parties submitted a proposed "Agreed Order To Remand" apparently conceding the monetary limits of

10

Elizondo's claims, the documents in the magistrate judge's possession at the time of the denial belied such a stipulation. This type of postremoval shenanigans is precisely the conduct precluded by *St. Paul Mercury*. *St. Paul Mercury*, 303 U.S. at 292, 58 S.Ct. at 592 ("[T]hough, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the court of jurisdiction."). *ANPAC* should not be read as obliging a district court to consider postremoval affidavits or stipulations; rather, *ANPAC* involved "an unusual case" in which the complaint left the jurisdictional amount ambiguous. *See Marcel*, 5 F.3d at 85. In the absence of such an ambiguity, postremoval stipulations and affidavits are of questionable sufficiency.[6] Here, as in *Marcel* but not in *ANPAC*, the original complaint adequately evinced an amount in controversy in excess of the jurisdictional threshold and obviated the need to consider material outside of the pleadings, the notice of removal, and the transfer motion.

Accordingly, we conclude that, at the time of removal, at least $50,000 was in controversy. The subsequent proposed "Agreed

---

[6] Needless to say, plaintiff's loyalty to her limited damage concession in the "Agreed Motion To Remand" waned at the prospect of receiving a $75,000 judgment. *See* Appellee's Brief at 5 (arguing that a federal court "must itself endeavor not to permit a circumvention of removal jurisdiction"). Although not properly considered in determining removal jurisdiction, it nevertheless demonstrates the diminished value of postremoval affidavits.

Order To Remand" did not defeat removal, and the magistrate judge was correct in denying the motion to remand.

II.

The next issue raised by defendants concerns their motion to transfer pursuant to section 1404(a).[7]  Section 1404(a) provides:

> "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

"'A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.'"  *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 209 n.5 (5th Cir. 1996) (quoting *Peteet v. Dow Chem.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 328 (1989)).  We have long emphasized the subjective nature of the district court's inquiry and accordingly afford a presumption of correctness to its decision.  *See, e.g.*, *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981) ("Appellate review is limited because it serves little purpose to reappraise such an inherently subjective decision."), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775 (1982).

The magistrate judge, when considering defendants' section

---

[7]    On October 30, 1995, defendants filed a motion styled "Motion To Transfer pursuant to 28 U.S.C. § 1401(a)."  Section 1401(a), of course, deals with stockholder derivative actions.  Their memorandum in support of the motion, however, makes clear that the motion sought a transfer pursuant to section 1404(a).

12

1404(a) motion to transfer was entitled, indeed required, to consider "all relevant factors" that might bear on the convenience of the forum. These factors included not only the situs of the defendants' corporate offices and witnesses, but also the plaintiff's choice of forum, potential delays, prior consent by the parties, and the proper allocation of judicial resources. *Peteet*, 868 F.2d at 1436. After a thorough review of the record, we conclude that the magistrate judge did not abuse his discretion. Although defendants, as Arizona corporations, argue that the venue is inconvenient,[8] other factors—such as Elizondo's choice of forum, the potential for delay, the parties' consent to trial by magistrate judge, and the progress made in the litigation prior to the defendants' transfer motion—are sufficient to support the magistrate judge's determination that venue should remain in the Southern District of Texas.

III.

The final issue presented is whether the magistrate judge erred by conducting a trial on the merits when defendants failed to appear at the February 1 Pretrial Conference. As a preliminary

---

[8]     Defendants did not move for transfer or dismissal pursuant to 28 U.S.C. § 1406(a). Section 1406(a) allows a district court to transfer or dismiss a case brought in an improper venue. The general venue statute is 28 U.S.C. § 1391. We need not address whether venue was proper in the Southern District of Texas because defendants have raised no such objection. Speaking broadly, section 1404(a) applies when venue is properly laid in the original district court and section 1406(a) applies in all other situations. In the former situation, the district court is entitled to exercise its discretion, in the latter it is not.

13

matter, it should be noted that it is not entirely clear whether the magistrate judge entered default judgment pursuant to Rule 55,[9] Rule 16(f), or simply chose to accelerate the date for trial on the merits by eleven days as some other form of sanction. Because the failure of counsel for defendants to appear at the February 1 Pretrial Conference provided the impetus for the magistrate judge's order, however, the propriety of the order is most appropriately addressed by a Rule 16(f) analysis.

A.

Rule 16 provides a trial judge with broad discretion to use pretrial conferences to expedite actions, discourage wasteful and protracted pretrial activities, improve the quality of trial preparation, and facilitate settlement. Fed. R. Civ. P. 16(a). In order to ensure the trial judge has the ability to achieve the objectives set forth in Rule 16(a), Rule 16(f) provides that a court may impose certain sanctions:

> "If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

---

[9] Under Rule 55(b)(2), of course, the magistrate judge would have been required to give three days notice of a default judgment. Fed. R. Civ. P. 55(b)(2). Accordingly, the "default judgment" must be justified, if at all, as a sanction under Rule 16(f).

14

Fed. R. Civ. P. 16(f). This Court reviews a lower court's entry of sanctions under Rule 16(f) for an abuse of discretion. *See Securities and Exchange Comm'n v. First Houston Capital Resources Fund, Inc.*, 979 F.2d 380, 381-82 & n.3 (5th Cir. 1992).

In *First Houston*, this Court reviewed the general standard by which a trial judge should assess the appropriateness of a dismissal or default judgment sanction. Observing the discretion afforded a trial judge, we noted that "courts 'have generally permitted it only in the face of a clear record of delay or contumacious conduct by the [party].'" *Id*. at 382 (quoting *Durham v. Florida East Coast Ry Co.*, 385 F.2d 366, 368 (5th Cir. 1967)).

There are, however, two remaining prerequisites to the award of a dismissal or default judgment sanction. First, "even with a clear record of delay or contumacious conduct," a trial judge cannot impose the sanction of a dismissal or a default judgment "unless the court first finds that a lesser sanction would not have served the interests of justice." *McNeal v. Papasan*, 842 F.2d 787, 793 (5th Cir. 1988). Second, the trial judge must "'expressly consider[] alternative sanctions and determine[] that they would not be sufficient.'" *Id*. (quoting *Callip v. Harris County Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985)). In other words, the trial judge must make findings on the record that alternative sanctions would not enable the court to accomplish the objectives of Rule 16(a), or, absent such findings, the record must

15

demonstrate that the trial court employed lesser sanctions that ultimately proved fruitless. *Callip*, 757 F.2d at 1521.

B.

Considering the first element, there is insufficient evidence of the type of contumacious behavior envisioned by our prior cases addressing the use of dismissals and default judgments as a sanction. Although the magistrate judge may have been justifiably provoked by the three consecutive, unexcused absences of Mr. Pyland, counsel for defendant, absent findings of delay or contumacious conduct the drastic sanction imposed was inappropriate. The only incidents of improper behavior on the part of Mr. Pyland were his unexcused absences from pretrial conferences on November 21, 1995, January 25, 1996, and February 1, 1996. There is evidence in the record that Mr. Pyland's absences were inadvertent and, "while careless, inconsiderate, and understandably exasperating to a conscientious trial judge, [the absences] more closely approximate[] the kind of negligence that does not warrant [a default judgment] than the stubborn resistance to authority that does." *John v. Louisiana*, 828 F.2d 1129, 1131-32 (5th Cir. 1987).

Significantly, there is no evidence in the record of delay caused by Mr. Pyland's absences; the dates set by the scheduling order were not compromised prior to February 1 and his absence on that date would not have precluded his attendance and participation at jury selection the next day. The trial itself was not scheduled

16

to begin until February 12. The record lacks any indication that Mr. Pyland's absence threatened the timeliness of the action or that the magistrate judge was even concerned in this regard. It is therefore difficult to see how delay of the kind that justifies the imposition of such a drastic sanction was present. A case-ending sanction pursuant to Rule 16(f) is not warranted when the rights of the party in compliance are not prejudiced, the progress of the case has not been delayed, and the noncompliant party has not acted with brazen defiance to the court's authority. *See, e.g.*, *Brinkman v. Abner*, 813 F.2d 744, 749 (5th Cir. 1987) (affirming dismissal where, after warning, attorney defied presiding judge's order and threatened to prejudice defendants' trial preparation); *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986) (affirming dismissal where, after warning, counsel failed to certify compliance with pretrial instructions and failed to show up at the pretrial conference).

Nor is there any evidence in the record that the magistrate judge made any effort to achieve compliance with the pretrial scheduling order prior to imposing the sanction. *See Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978). As we observed in *First Houston*:

> "This Court in *Callip* has excused the absence of express findings concerning alternative sanctions when the district court had previously imposed lesser sanctions and had issued an ultimatum, although we noted in that case that express findings are required. That is not this case. Here, there is nothing in his order to show

17

that the district judge contemplated any sanction but the most severe one. He swung the axe less than one half-hour after [the defendant] had failed to appear."

979 F.2d at 383. The case at hand is indistinguishable; the magistrate judge's failure to consider, on the record, his reasons for imposing as his initial sanction the most severe one available is fatal to the legitimacy of the judgment.[10]

IV.

Upon a careful review of the record we have determined that the remainder of Pilgrims' contentions are without merit.

## Conclusion

Because the magistrate judge failed to consider patently available alternatives to accelerating the date of trial and entering judgment as a sanction and because there is insufficient evidence of contumacious conduct or delay warranting such a sanction, we VACATE the judgment and REMAND the case for further proceedings not inconsistent herewith.

VACATED and REMANDED

---

[10]   Many alternatives were available to the magistrate judge. "Assessment of fines, costs, or damages against the [defendant] or his counsel, attorney disciplinary measures, . . . and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket." *Rogers v. Kroger Co.*, 669 F.2d 317, 321-22 (5th Cir. 1982). The magistrate judge could also have had the trial governed by plaintiff's proposed pretrial order.

18