**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-30897

Charles Guidry; Charlene Guidry,

Plaintiffs-Appellants,

VERSUS

United States Tobacco Company, Inc., et al.

Defendants,

Smokeless Tobacco Council, Inc.; Smokeless Tobacco Research
Council, Inc.; Tobacco Institute, Inc.; Council for
Tobacco Research--USA, Inc.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

September 14, 1999

Before REYNALDO G. GARZA, POLITZ, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Plaintiffs-Appellants Charles and Charlene Guidry appeal from the district court's dismissal, for lack of personal jurisdiction, of their civil actions against Defendants-Appellees, Smokeless Tobacco Council, Inc.; Smokeless Tobacco Research Council, Inc.;

1

Tobacco Institute, Inc.; and, Council for Tobacco Research--USA, Inc. Concluding that the plaintiffs have established a prima facie showing of personal jurisdiction sufficient to avoid dismissal without an evidentiary hearing, we reverse and remand.

## I. Facts and Procedural History

Charles and Charlene Guidry, residents of Louisiana, filed suit in Louisiana state court against six tobacco manufacturers, United States Tobacco Co., Pinkerton Tobacco Co., Conwood Company, L.P., R.J. Reynolds Tobacco Co., Philip Morris Incorporated, and Brown & Williamson Tobacco Co.; and four of the tobacco manufacturers' trade associations, Smokeless Tobacco Council, Inc., Smokeless Tobacco Research Council, Inc., Tobacco Institute, Inc., and Council for Tobacco Research--USA, Inc. None of the defendants is a resident of Louisiana, and none of the tobacco trade associations is qualified to do business in Louisiana.

The plaintiffs alleged, principally, that each tobacco manufacturer and each tobacco trade association made intentional misrepresentations in Louisiana to Charles Guidry and other residents that the products of the tobacco manufacturers sold in the state were not addictive or carcinogenic; that when the tobacco manufacturers and the tobacco trade associations made these misrepresentations they knew, not only that the tobacco products would cause addiction and cancer, but that the tobacco manufacturers manipulated the levels of nicotine in their tobacco products to create a highly compulsive physiological need for

2

nicotine in Charles Guidry and other residents of the state; that Charles Guidry, while in Louisiana, relied on each defendant's knowingly false representations, purchased and used the tobacco manufacturers' products, became heavily addicted to nicotine, and contracted cancer from the tobacco.[1] The plaintiffs also allege that the tobacco trade associations, in addition to individually committing delictual offenses and quasi-offenses causing the plaintiffs injury and damage in Louisiana, conspired and acted in concert with each other and the tobacco manufacturers to conceal or falsely minimize the addictive and carcinogenic effects of the tobacco products from the plaintiffs, to create a false impression that no evidence of tobacco addiction or carcinogenesis had been found even after diligent scientific research, and to thereby create in Charles Guidry and other residents in Louisiana the false impression that the addictive and carcinogenic effects of the tobacco products were much less than the defendants knew them to be.

Service of process on the four tobacco trade association defendants was made under the Louisiana long-arm statute, La. Rev. Stat. Ann. § 13:3204 (West 1991). All of the defendants removed the case to the federal district court. The four tobacco trade

---

[1] The particularized nominate causes of action asserted by the plaintiffs are: fraud and deceit; intentional misrepresentation; negligent misrepresentation, breach of express or implied warranty, intentional infliction of emotional distress, negligence, strict liability, and redhibition.

association defendants moved under Rule 12(b)(2) to dismiss the suit against them for lack of personal jurisdiction.  The original district court judge to whom the motion was assigned denied it based on his findings that (1) the plaintiffs had presented a prima facie case for specific personal jurisdiction; and (2) the exercise of personal jurisdiction over those defendants will not offend traditional notions of fair play and substantial justice.

A different district court judge, in response to the tobacco trade associations' motion, certified under 28 U.S.C. § 1292(b) one part of  the  personal jurisdiction inquiry, i.e., whether there was personal jurisdiction based on "the foreign defendants' alleged conspiracy with in-state defendants."  A panel of this court denied certification of an appeal on the question. Guidry v. United States Tobacco Co., No. 97-00110 (5th Cir. Jun. 17, 1997).  The tobacco trade association defendants moved for reconsideration of the original district judge's decision denying their Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.  After reassignment of all motions to a different judge, the district court granted reconsideration and dismissed the four tobacco trade association defendants from the suit.  In its memorandum ruling the district court assigned reasons stating that (1) specific personal jurisdiction was lacking because the plaintiffs' allegations of a conspiracy between the tobacco trade associations and the tobacco manufacturers were merely "conclusory;" and (2) general personal jurisdiction was not present because the alleged contacts between

4

the four trade association defendants and the forum were not "substantial, continuous and systematic."[2]   The plaintiffs appealed.

## II. Discussion

The single issue presented by the appeal is whether the district court had personal jurisdiction over the tobacco trade association defendants.  We look first to Louisiana's "long-arm" statute, La. Rev. Stat. Ann. § 13:3201 (West 1991).  This law extends personal jurisdiction of courts sitting in Louisiana, including federal courts, to the limits permitted under the due process clause of the Fourteenth Amendment.  Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La. 1987); See Petroleum

---

[2]In its memorandum ruling the district court held that neither specific nor general personal jurisdiction could be exercised over any of the tobacco trade association defendants. Yet in its judgment the district court purportedly dismissed the plaintiffs' claims against these defendants with prejudice. Under the circumstances, the district court's judgment can have no effect as a dismissal with prejudice but must be considered as a dismissal for lack of personal jurisdiction, which is not a judgment on the merits.  Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication. Ruhrgas AG v. Marathon Oil Co., 119 S.Ct. 1563, 1570 (1999)(Ginsburg, J.).   A court must find jurisdiction, both subject matter and personal, before determining the validity of a claim. Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994); Cf.  Boudloche v. Conoco Oil Corp., 615 F.2d 687, 688-89 (5th Cir. 1980)(no subject matter jurisdiction); Dassinger v. South Central Bell Telephone Co., 505 F.2d 672, 674 (5th Cir. 1974)(same).  Furthermore, if we were to review the district court's judgment as a summary judgment on the merits we would reverse and remand for further proceedings because the defendants are not entitled to a summary judgment on the present record made by the parties in anticipation only of a ruling on personal jurisdiction.

Helicopters, Inc. v. Avco Corp., 834 F.2d 510 (5th Cir. 1987); Petroleum Helicopters, Inc. v. Avco Corp., 804 F.2d 1367 (5th Cir. 1986). Our sole inquiry, therefore, is whether the district court could, consistent with due process, assert personal jurisdiction over the tobacco trade association defendants.

The due process clause of Fourteenth Amendment protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). Due process generally demands that the nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

Minimum contacts with a forum state may arise incident to a federal court's "general" or "specific" jurisdiction over a nonresident defendant. See Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990). If a defendant has sufficient "continuous and systematic" general contacts with the state, e.g., see Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446 (1952), the forum may exercise general personal jurisdiction over the defendant for a "cause of action [that] does not arise out of or relate to the [defendant's] activities in the forum state." Helicopteros

6

Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1952). The district court determined, and the plaintiffs do not argue to the contrary, that the tobacco trade association defendants' contacts with Louisiana were insufficient to support general personal jurisdiction.

The plaintiffs contend, however, that the state or federal courts in Louisiana may exercise specific personal jurisdiction over the defendants because this controversy "is related to or 'arises out of' [the defendants'] contacts with the forum." See id.(citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). We are required to examine the relationship between the defendants, the forum state, and the litigation, See Shaffer, 433 U.S. at 204, to determine "whether the defendant[s] purposefully established 'minimum contacts' in the forum state" so that it was foreseeable "that the defendant[s] conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." Burger King Corp., 471 U.S. at 474 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)).

The analysis of specific jurisdiction may be refined further into a three-part test: (1) Did the defendant have minimum contacts with the forum state--purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiffs cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be

7

reasonable and fair?  4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069, at 174 (Supp. 1999) (citing authorities).

Procedurally, the party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a nonresident defendant.  Bullion, 895 F.2d at 216; Brown v. Flowers Industries, Inc., 688 F.2d 328, 332 (5th Cir. 1982), cert. denied, 460 U.S. 1023 (1983).  When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor. Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir.1999); Bullion, 895 F.2d at 217; Brown 688 F.2d at 332; 5A Wright & Miller, § 1351, at 117–18 (Supp. 1999).

The district court, contrary to the rule affirmed in Latshaw, Bullion, and Brown, failed to recognize that, because there had been no evidentiary hearing, Charles and Charlene Guidry needed only to establish, at the pre-trial, pre-evidentiary hearing stage of the proceedings, a prima facie showing that (1) each tobacco trade association defendant had minimum contacts with the forum state, and (2) the plaintiffs had a cause of action arising out of each such defendant's individual forum related contacts. See Bullion, 895 F.2d at 217.  Consequently, the district court passed

8

over these crucial issues and only concerned itself with whether there was specific jurisdiction based upon a conspiracy between the tobacco trade associations and the tobacco manufacturers and whether there was general jurisdiction over the trade associations. The district court did not determine whether the plaintiffs had made a prima facie case of specific personal jurisdiction over each tobacco trade association defendant based on a tort committed in the state, individually and not as part of a conspiracy, by each particular defendant.

We review de novo a district court's grant of a motion to dismiss for lack of personal jurisdiction. Latshaw, 167 F.3d at 210-11; Allred v. More & Peterson, 117 F.3d 278, 281 (5th Cir. 1997), cert. denied, 118 S.Ct. 691 (1998); Jobe v. ATR Marketing, Inc., 87 F.3d 751, 753 (5th Cir. 1996). From our review of the pleadings, depositions, affidavits and exhibits of record, we conclude that the plaintiffs carried their burden of establishing a prima facie showing that each tobacco trade association defendant individually had minimum contacts with the forum out of which the plaintiffs' causes of action arose. Consequently, the district court erred in dismissing the plaintiffs' actions against the trade associations for lack of personal jurisdiction.

The plaintiffs alleged in their complaint the following facts: (1) the tobacco trade association defendants, holding themselves out to be fair and impartial scientific research organizations, intentionally communicated false information to Charles Guidry in

Louisiana concerning the tobacco products being sold by the tobacco manufacturer defendants in the state, viz., that the tobacco products were not capable of causing serious addictions and cancer in humans; and that any evidence to the contrary was unreliable and not scientifically valid; (2) Charles Guidry relied on their false representations, repeatedly purchased and used the tobacco products in Louisiana, and, as a result, became unalterably addicted to nicotine and contracted cancer at the base of his tongue.  The plaintiffs supported their complaint with depositions and exhibits which tended to corroborate that, despite the tobacco trade associations' knowledge of the addictive and carcinogenic risks associated with use of the tobacco products, they published articles or ads in national publications circulated in Louisiana defending and encouraging the use of tobacco products by adults as a safe, wholesome and traditional American activity; and that at least one of the tobacco trade association defendants caused its representatives to appear on national network television programs and broadcast into Louisiana knowingly false representations that the tobacco products were not addictive, that the tobacco manufacturer defendants did not manipulate the products' levels of nicotine for the purpose of causing and maintaining addictions in consumers, and that there was no reliable scientific evidence or indication that the use of the tobacco products caused compelling addictions or cancers.

In support of the motions to dismiss for lack of personal

10

jurisdiction the tobacco trade associations defendants presented brief, almost identical, affidavits by their officers stating that they had never "promoted" or "advertised" tobacco products. From the depositions of the officers and the plaintiffs' exhibits, however, it is evident that at least one of the tobacco trade associations conceded that it had placed articles or ads in national publications sold in Louisiana approving and encouraging the use of tobacco products; and that at least one of the other trade associations caused its representatives to appear on national network television programs broadcast in Louisiana and deny as untrue and scientifically invalid representations made by members of Congress, e.g., that the tobacco manufacturer defendants' products were addictive and carcinogenic; that the manufacturers knowingly manipulated and maintained addictive levels of nicotine in their products for the purpose of creating in consumers the physiological need for nicotine and their products as vehicles for nicotine delivery and consumption. It is possible that the defendants' affidavits are not actually in conflict with the plaintiffs' allegations. The trade association officers, by denying that their organizations promoted or advertised tobacco products, may have intended to deny only that the trade associations engaged in commercial sales or brand name advertising, and not other forms of public or private communications. If, however, "there are conflicts between some of the facts alleged by the plaintiffs and those alleged by the defendants in their affidavits, such conflicts

11

must be resolved in plaintiff(s') favor for the purposes of determining whether a prima facie case for in personam jurisdiction has been established." <u>Brown</u>, 688 F.2d at 332 (citing and quoting <u>United States Ry. Equip. Co. v. Port Huron & Detroit R.R.</u>, 495 F.2d 1127, 1128 (7th Cir. 1974)(internal quotations omitted)); <u>Latshaw</u>, 167 F.3d at 211; <u>Bullion</u>, 985 F.2d at 217.

Taking as true the facts alleged in the complaint, and shown by the depositions, affidavits and exhibits, we conclude that the plaintiffs have made a prima facie showing that each tobacco trade association defendant individually had sufficient minimum contacts with the forum state of Louisiana, which caused the plaintiffs to suffer injury or damage in Louisiana, consisting of the following intentional and nonintentional torts through each association's acts or omissions in the state: (1) Intentional Misrepresentation Or Delictual Fraud. The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury. <u>See</u> <u>Newport Ltd. v. Sears, Roebuck & Co.</u>, 6 F.3d 1058, 1068 (5th Cir. 1993), <u>cert. denied</u>, 512 U.S. 1221 (1994); <u>Abell v. Potomac Ins. Co.</u>, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988), <u>vacated on other grounds</u>, 492 U.S. 914 (1989)(citing La.Civ.Code arts. 1847 [superseded by La.Civ.Code art. 1953 (1985)], 2315); <u>Ballard's Inc. v. North American Land Development Corp.</u>, 677 So.2d 648, 651 (La.App. 2nd Cir. 1996); <u>Pittman v. Piper</u>, 542 So.2d 700, 702

12

(La.App. 4th Cir. 1989); <u>Deville v. Leonards</u>, 457 So.2d 311, 313 (La. App. 3d Cir. 1984). Note that these cases involve only economic harm. We would expect Louisiana courts to use a standard for intentional misrepresentation involving risk of physical harm similar to the Restatement (Second) of Torts § 310 (1965): "An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of harm to the other, and (b) knows (i) that the statement is false, or (ii) that he has not the knowledge which he professes." <u>Cf.</u>, <u>infra</u>, <u>Devore v. Hobart Manufacturing</u>, 367 So.2d 836, 839 (La. 1979). (2) Negligent Misrepresentation That Results In Physical Harm. The elements of a Louisiana action based on negligent misrepresentation resulting in physical harm appear to be: (a) a negligent misrepresentation or giving of false information to another, and (b) foreseeable action taken by the other in reasonable reliance on such information, (c) which results in physical harm to the other or to a third person who reasonably could be expected to be put in peril by the action taken. <u>See</u> <u>Devore</u>, 367 So.2d at 839 (agreeing with the recognition of a negligent misrepresentation cause of action by <u>White v. Lamar Realty, Inc</u>., 303 So.2d 598, 601 (La.App. 2nd Cir. 1974) based on Civil Code articles 2315 and 2316, which "afford a broad ambit of

13

protection for persons damaged by intentional and negligent acts of others," and indicating that Restatement (Second) of Torts, § 311 (1965) provides the standard of conduct for "negligent misrepresentation that results in physical harm."); accord Daye v. General Motors Corp., 720 So.2d 654, 659 (La. 1998); Daye v. General Motors Corp., 712 So.2d 120, 126 (La.App. 2nd Cir. 1997); See State Farm Fire & Casualty Co. v. Valley Elec. Membership Corp., 558 So.2d 731, 736 (La.App. 3d Cir. 1990). On the other hand, in cases involving only economic harm or pecuniary loss, the Louisiana Supreme Court and courts of appeal have applied a standard identical or similar to Restatement (Second) Torts § 552 (1977). Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1016-18 (La. 1993); Devore, 367 So.2d at 838 n.1, 839; Cf., Beal v. Lomas & Nettleton Co., 410 So.2d 318, 322 (La.App. 4th Cir. 1982); Dousson v. South Cent. Bell, 429 So.2d 466, 468 (La.App. 4th Cir. 1983). (3) Intentional Infliction of Mental Distress. The elements of the Louisiana cause of action for intentional infliction of mental distress are: (a) extreme and outrageous conduct (b) intentionally or recklessly causing (c) severe emotional distress or bodily harm to another. Bustamento v. Tucker, 607 So.2d 532, 538 (La. 1992) (adopting Restatement (Second) of Torts § 46); White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991)(same); Cf. Moresi v. State Department of Wildlife and Fisheries, 567 So.2d 1081, 1095 (La. 1990)(discussing Restatement (Second) of Torts § 46 approvingly).

14

The plaintiffs have made an adequate prima facie showing, so far as is required at this stage of the proceedings, that they have causes of action against each of the tobacco trade association defendants, individually and directly, for intentional and nonintentional torts committed by each defendant in the state, that caused physical injuries and physically harmful effects in the state, which arose out of or resulted from each defendant's minimum contacts with the forum state. The facts shown are that each tobacco trade association defendant intentionally and negligently communicated to the plaintiffs and other residents in Louisiana false representations of material facts as to the addictive and cancer-causing effects of the manufacturers' tobacco products and their intentional manipulation and control of nicotine at addictive levels in the products; that each defendant intended to deceive the plaintiffs and others in the state with respect to these material facts; that Charles Guidry justifiably relied on each defendant's false representations of material facts; and that as a result of each defendant's false representations and his reliance on them, Charles Guidry, in Louisiana, used the manufacturers' tobacco products, became severely and unalterably addicted to nicotine, and contracted cancer from his use of the products as an addict; that each defendant intended by its false misrepresentation to induce Charles Guidry and other Louisiana consumers to begin or continue to use the manufacturer's tobacco products, to become addicted to them, and to be exposed to an unreasonable risk of contracting

15

cancer from the tobacco products; and that each defendant's acts and omissions in Louisiana constituted extreme and outrageous conduct that intentionally or recklessly caused the plaintiffs severe emotional distress and bodily harm in the forum state.

When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses. See, e.g., Jobe, 87 F.3d at 753; Trinity Industries Inc. v. Myers & Associates, Ltd., 41 F.3d 229, 231 (5th Cir.), cert. denied, 516 U.S. 807 (1995); Bullion, 895 F.2d at 217; D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 547 (5th Cir. 1985); DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1270-71 (5th Cir. 1983); Brown, 688 F.2d at 1333; Simon v. United States, 644 F.2d 490, 499 (5th Cir. 1981); Wilkerson v. Fortuna Corp., 554 F.2d 745, 748 (5th Cir.), cert. denied, 434 U.S. 939 (1977); Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1233-34 (5th Cir. 1973), abrogated on other grounds by U.S. v. Cooper, 135 F.3d 960 (5th Cir. 1998); Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 866-67 (5th Cir. 1965); Calagaz v. Calhoon, 309 F.2d 248, 256-57 (5th Cir. 1962); See 4 Wright & Miller, §1069; Reese & Galston, Doing an Act or Causing Consequences as Bases of Judicial

16

Jurisdiction, 44 Iowa L. Rev. 249 (1959). Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. See Calder v. Jones, 465 U.S. 783, 789-90 (1984); Bullion, 895 F.2d at 217; Brown, 688 F.2d at 1333; Simon, 644 F.2d at 499; See 4 Wright & Miller, §1069.

In Calder v. Jones, supra, the Supreme Court upheld personal jurisdiction over a reporter and editor, who had written and approved an article in Florida, in a California libel suit brought by a California plaintiff. The Court held that the defendants' activities, knowing that the article involved a California resident and that it would be distributed there, brought them within the jurisdiction of the court because they knowingly had engaged in tortious activity outside the state that had an effect in the forum state. Id. at 790; See 4 Wright & Miller, §1067. The Supreme Court emphasized that the Florida journalists had intentionally aimed their economic and emotionally harmful conduct at the California resident:

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that

17

the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

. . . .

We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California.

Id. at 789-91 (internal citations omitted).

This Court of Appeals and the Seventh Circuit have recognized that "[t]he Supreme Court did not intend the Calder 'effects' test to apply only to libel cases." Allred, 117 F.3d at 286-87 (quoting Wallace v. Herron, 778 F.2d 391, 395 (7th Cir. 1985), cert. denied, 475 U.S. 1122 (1986)). The Allred and Wallace courts concluded that, under the particular circumstances of the case, a nonresident defendant's intentional act of causing process to be served by mail on a plaintiff in his home forum state was insufficient as a "minimum contact" for purposes of jurisdiction. "[In Calder,] the 'effects' of the intentional tort of libel in the forum state (i.e., the plaintiff's residence) are perhaps more pronounced than the 'effects' of most other intentional torts." Allred, 117 F.3d at 287 (quoting Wallace, 778 F.2d at 395 (internal quotations

18

omitted)).  We conclude, therefore, and believe it was implicit in the _Allred_ and _Wallace_ decisions, that the "effects" of intentional and nonintentional torts causing death or serious physical harm are as "pronounced" as the merely economic and emotional consequences of libel.  Thus, under _Calder_, the effects of torts committed outside the forum state that cause death or serious physical harm may also serve as minimum contacts with the forum for purposes of personal jurisdiction.  _See_ Restatement (Second) of Conflict of Laws, § 37 and cmt. e (1988 Revision).

That a  state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an intentional or physically harmful tort done elsewhere, with respect to any claim arising from these effects, has been recognized by the American Law Institute, Restatement (Second) of Conflict of Laws, § 37.  In pertinent part, Comment e. of Section 37, states: "When the act was done with the intention of causing the particular effects in the state, the state is likely to have judicial jurisdiction though the defendant had no other contact with the state.  This will almost surely be so when the effect involves injury to person or damage to tangible property." _Id._ at  54 and 57 (1988 Revision).  That, under certain circumstances, the state is likely to have judicial jurisdiction even when the defendant did not intend to cause the particular effect in the state but could reasonably have foreseen that it would result from his act done outside the state, is recognized by the Restatement as follows:

19

> The fact that the effect in the state was only foreseeable will not of itself suffice to give the state judicial jurisdiction over the defendant. Judicial jurisdiction is likely to exist in such a case, however, if it was somewhat more than merely foreseeable that the defendant's act would cause the particular effect in the state. . . . Jurisdiction will also exist when, in addition to the effect being foreseeable, the defendant has other relationships with the state.

Id., at 55, 58.(citing, inter alia, Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 597-98 (5th Cir. 1969)).

In the present case, the plaintiffs have made a prima facie showing that the tobacco trade association defendants had sufficient minimum contacts with the state of Louisiana and that plaintiffs' causes of action arose out of these minimum contacts so as to permit the State to exercise personal jurisdiction over those defendants with respect to this lawsuit. The trade associations are not charged with mere untargeted negligence endangering only economic or reputational interests. Rather, their alleged intentional and negligent tortious actions were knowingly initiated and aimed at users and potential consumers of tobacco products in Louisiana, including Charles Guidry. Each defendant made false misrepresentations of facts that it knew would have a potentially devastating physically harmful impact on Charles Guidry and other Louisiana residents. And each defendant knew that the brunt of that injury would be felt by the plaintiffs, as well as other citizens and public and private entities, in the state in which

20

they live.  "Under the circumstances, [the tobacco trade association defendants] must 'reasonably anticipate being haled into court there' to answer for" the offenses and quasi-offenses they allegedly committed.  Calder, 465 U.S. at 789-90 (citing World-Wide Volkswagen Corp., 444 U.S. at 297; Kulko v. Superior Court, 436 U.S. 84, 97-98 (1978); Shaffer, 433 U.S. at 216).  An individual injured in Louisiana need not go to New York, Delaware, or Washington, D.C. to seek redress from persons who, though remaining in other states, intentionally, knowingly and recklessly caused severe physical, emotional and economic injuries to the plaintiffs and others in Louisiana.  Sufficient minimum contacts with Louisiana were made by defendants in the course of their alleged torts to make jurisdiction over the tobacco trade associations proper in Louisiana.

Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 207 (5th Cir. 1996)(quoting Burger King Corp., 471 U.S., at 477).  When determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest

21

of the several states in furthering fundamental substantive social policies. <u>Gundle Lining Construction Corp.</u>, 85 F.3d at 207 (citing <u>Asahi Metal Industry Co., Ltd. v. Superior Court</u>, 480 U.S. 102, 113 (1987); <u>World-Wide Volkswagen Corp</u>. 444 U.S. at 292).

In attempting to overcome the prima facie case that jurisdiction is reasonable, the defendant may present evidence and argument as to certain considerations that the Supreme Court has indicated are relevant in deciding whether maintenance of a suit comports with traditional notions of fair play and substantial justice.  The relationship between the defendant and the forum must be such that it is reasonable to require the defendant to defend the particular suit which is brought there.  <u>International Shoe Co.</u>, 326 U.S. at 317.  Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, at least where that interest is not adequately protected by the plaintiff's power to choose the forum, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies.  <u>Asahi Metal Industry Co. Ltd.</u>, 480 U.S. at 113; <u>Burger King Corp.</u>, 471 U.S. at 476-77; <u>World-Wide Volkswagen</u>, 444 U.S. at 292.  These considerations sometimes serve

22

to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Burger King Corp., 471 U.S. at 477; Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir. 1990).

The trade association defendants have not made any showing that litigating this matter in Louisiana presents an unreasonable burden on them. The State of Louisiana has a substantial interest in the litigation of these claims against foreign defendants who allegedly committed intentional and tortious acts directed at Louisiana that caused addiction to tobacco products and cancer in Charles Guidry, thereby inflicting serious personal injuries on the plaintiffs. Obviously the Guidrys have a strong interest in obtaining the convenient and efficient relief that can only be provided by a single lawsuit in their domicile against all defendants allegedly liable for the indivisible injuries the plaintiffs have suffered. Moreover, the judicial system's concerns for the efficient resolution of controversies preponderates in favor of a single litigation inclusive of all defendants whose allegedly intentional and tortious acts have coalesced to injure the plaintiffs. In short, the exercise of in personam jurisdiction by the federal district court sitting in Louisiana, as far as can be determined at this stage of the litigation, is reasonable and comports with due process.

Accordingly, we need not consider or decide the complex issues of whether the plaintiffs made a prima facie showing that each of

23

the tobacco trade associations also had sufficient minimum contacts with Louisiana because it conspired with one or more tobacco manufacturer defendants to commit an intentional or willful act in, or that such act had sufficient effects in, Louisiana, and that the commission of that act caused damage to the plaintiffs in Louisiana.  In case the district court is confronted with these issues again, however, we call its attention to several basic principles of law that appear to be relevant but that were either overlooked or misunderstood by the district court in its memorandum ruling.

The governing substantive Louisiana law principles are set forth by La. Civil Code art. 2324(A), which provides: "He who conspires with another to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such an act."  For assistance in determining the Louisiana courts' interpretation of this provision see the discussion and citations of the state cases in Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law, § 2-5 (1996).

The pleadings in a civil action for conspiracy must comply with the general requirement in  Federal Rule of Civil Procedure 8 that the complaint contain a direct, simple, and concise statement that demonstrates the pleader is entitled to relief. See 5 Wright & Miller, § 1233 (citing Arnold v. Board of Educ. Of Escambia County, Ala., 880 F.2d 305, 309 (11th Cir. 1989); Burns v. Spiller, 161 F.2d 377, 377 (D.C. Cir.), cert. denied, 332 U.S. 792 (1947)).

24

However, "a general allegation of conspiracy without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." McCleneghan v. Union Stock Yards Co., 298 F.2d 659, 663 (8th Cir. 1962)(Blackmun, J.); See also 5 Wright & Miller, § 1233 (citing other authorities to the same effect).

When a party asserts a claim in an action for civil conspiracy, "pleading of the evidence is surely not required and is on the whole undesirable." Nagler v. Admiral Corp., 248 F.2d 319, 326 (2d Cir. 1957)(Clark, C.J.); See 5 Wright & Miller, §§ 1221 and 1233. "The courts have recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint." 5 Wright & Miller, § 1233, at 257 (citing authorities). But the complaint must contain sufficient information to show that a valid claim for relief has been stated and to enable the opponent to prepare adequate responsive pleadings. Id.

Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." See 12 Wright & Miller, § 3161, at 548 ("Most of the forms are exceedingly short and general in their allegations. They deserve careful study for they indicate much better than do the bare words of the rules the revolution in

25

procedure that the rules were intended to accomplish. . . . Pleadings similar to the Official Forms inform the adversary of the claim or defense asserted with sufficient particularity to enable it to prepare a responsive pleading and the discovery and pretrial rules amply protect the parties from surprise."). As distinguished from conspiracy, Rule 9(b) expressly requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P 9(b). However, Official Form 13 demonstrates that even fraud may be pleaded without long or highly detailed particularity. 12A Wright & Miller, App. D Form 13 ("Defendant C.D. on or about_____conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to.").

Contrary to the district court's memorandum ruling, <u>Thomas v. Kadish</u>, 748 S.2d 276 (5th Cir. 1984), did not control its decision of whether the plaintiffs made a prima facie showing of minimum contacts with Louisiana by each trade association defendant based on its civil conspiracy with the tobacco manufacturers to commit an intentional or willful act, which was carried out and resulted in damage to the plaintiffs in the state. In that case, Thomas brought suit under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against various professors, administrators, and students associated with his attendance at a California law school alleging that they

26

"'conspired to create a record against him while he was in California that would disqualify plaintiff from practicing law' in Texas . . . and . . . joined in a conspiracy with the Texas [Bar Examiners]'to force plaintiff to drop his California suit' against them." Id. at 282. This court concluded that neither the "conclusory allegations of conspiracy by the California defendants based upon their acts in California, nor the alleged effects of this conspiracy in Texas, show a claim of sufficient minimum contacts with Texas that would support personal jurisdiction of Texas Courts against these defendants for their acts in California." Id. at 282 (citing Burnett v. Short, 441 F.2d 405, 406 (5th Cir. 1971)(a § 1985 conspiracy complaint dismissed for failure to state a claim because "the complaint is devoid of any factual allegations, which taken to be true, would support the requisite element of conspiracy by the defendants")). Thomas v. Kadish is a simple case in which the complaint was devoid of factual allegations. The plaintiff alleged no background facts whatsoever in support of his bare allegations of two very unlikely conspiracies, one between persons in California in 1977-1980 to create a record against him to disqualify him from practicing law in Texas in 1981, and another between the same California residents and the Texas Bar Examiners  to force him to drop his suit against the California defendants. Although we intimate no opinion as to the outcome, the Guidrys' allegations, depositions and exhibits present a considerable amount of detailed information in support of

27

a less farfetched conspiracy scenario.  Consequently, the present case presents a dissimilar and more difficult problem for decision that is not readily controlled by the easier no-factual allegation case of Thomas v. Kadish.[3]

### III.  Conclusion

For the reasons set forth, the judgment of the district court dismissing the plaintiffs' suit against the tobacco trade association defendants for lack of personal jurisdiction is REVERSED and the case  is REMANDED to the district court for further proceedings.

---

[3]See also Black v. ACME Markets, Inc., 564 F.2d 681, 685-86 (5th Cir. 1977) (personal jurisdiction and Texas long arm statute reached nonresident corporation alleged to have conspired with co-defendants to depress Texas beef prices and to have purchased $1.5 million of products originating in Texas in one year).