John A. OLAGUES

v.

Patricia STAFFORD, et al.

Nos. CIV.A. 03–3428, CIV.A. 04–195.

United States District Court,
E.D. Louisiana.

April 30, 2004.

Edward Joseph Koehl, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Plaintiff.

Eve B. Masinter, Lisa D. Munyon, McGlinchey Stafford, PLLC, M. Suzanne Montero, Attorney at Law, Nancy J. Marshall, Anne Burguieres Rappold, Deutsch, Kerrigan & Stiles, Freeman Rudolph Matthews, Thomas Allen Usry, Craig Edmond Frosch, Usry, Weeks & Matthews, New Orleans, LA, Ivo Michael Labar, James Matthew Wagstaffe, Michael John Von Loewenfeldt, Kerr and Wagstaffe, LLP, San Francisco, CA, for Defendants.

DUVAL, District Judge.

Before the Court are numerous motions to dismiss. In Civil Action No. 03–3428 (the "42 U.S.C. § 1983 Case"), Rule 12 Motions to Dismiss have been filed by defendants Peggy Bennington (Rec.Doc. 20), Christopher Pool (Rec.Doc. 23), City of Belvedere (Rec.Doc. 23), Patricia Stafford (Rec.Doc. 26), Leon Kousharian (Rec. Doc. 26), Otis Bruce (Rec.Doc. 26), Marin County (Rec.Doc. 26), and Charlotte Jensen (Rec.Doc. 29). Also, defendants Pool, Stafford, and Jenson have filed motions to dismiss in Civil Action No. 04–195 (the "Hague Convention Case") (Rec. Docs. 7, 8, and 13, respectively). The Court notes that plaintiff has voluntarily dismissed his claims against defendant Bennington in the 42 U.S.C. § 1983 Case and against defendants Pool and Stafford in the Hague Convention Case, thereby rendering motions to dismiss those claims moot. Having reviewed the pleadings, memoranda, exhibits, and having heard oral argument, the Court **GRANTS** the remaining defendants' motions on the grounds that personal jurisdiction over all defendants except David Wolf is lacking.[1]

## I. BACKGROUND

The instant matter arises out of an international child custody dispute. Plaintiff John Olagues and defendant Charlotte Jensen were previously married and have two minor daughters, Caroline Olagues and Christine Olagues (the "Children"). Prior to the pertinent divorce and plaintiff's subsequent deportation, Olagues, Jensen and the Children lived together in New Zealand. Jensen, a Danish citizen, and the Children, citizens of the United States, still reside permanently in New Zealand. Olagues is a citizen and resident of Louisiana.

Under a January 17, 2001 New Zealand district court order ("NZ Custody Order"), Olagues and Jensen held custody of the Children whereby Olagues was entitled to physical custody of the children during seventy-five percent (75%) of weekends, fifty percent (50%) of school holidays, and one Tuesday evening per month. That custodial decree provided specifically that Olagues have access to the Children "either in California or in New Zealand for 2 weeks of the July school holidays." Jensen was to have custody of the Children at all other times. In his Complaint, Olagues characterizes the NZ Custody Order as the operative court order governing custody of the Children. Additionally, a December 21, 2000 *ne exeat* order (the "*Ne Exeat* Order*") prohibited either Jensen or Olagues from removing the Children from New Zealand without mutual agreement or court order.

Olagues' Complaint also refers to a September 30, 2002 New Zealand family court order (the "NZ Access Order") governing plaintiff's "right to access" to the Children. That order provides that despite being deported from New Zealand, Olagues would nonetheless receive access to the Children. The NZ Access Order granted Olagues two weeks of access to the Children in

---

1. Defendant David Wolf, a Jefferson Parish Assistant District Attorney, is the only defendant who has not filed a motion to dismiss on the basis of lacking personal jurisdiction.

California during July of 2003. The order made clear, however, that "[t]here is no issue that New Zealand is the country of habitual residence of the children." Olagues was required to register a copy of the NZ Access Order, and that order was registered in the Santa Clara County Superior Court. That Court issued an order (the "CA Registration Order") registering the NZ Access Order.

Pursuant to the terms of the NZ Access Order, Olagues arranged for access to the Children in California beginning on July 2. In anticipation of that visit, Olagues sent a letter to Jensen on June 17, 2003 that stated: "I, JOHN ANDREW OLAGUES, hereby swear that at no time will I take Caroline and Christine Olagues out of California unless I have their mother's prior written permission." On June 21, 2003, Jensen and the Children departed for California to attend Jensen's stepfather's funeral. The Children were subsequently transferred into the custody of Olagues on July 2, 2003. On July 5, 2003, Olagues and the Children left California, arriving in River Ridge, Louisiana, five days later. Olagues had not obtained Jensen's prior written permission to leave California with the Children and he did not return the girls after two weeks as required by the court order. Plaintiff Olagues contends, however, that Jensen knew of the Children's whereabouts, spoke with them daily by telephone, and could have visited the girls if she had so chosen.

On July 9, 2003, having learned of the Children's whereabouts in Louisiana, defendant Jensen contacted defendant Stafford, an investigator for the Marin County District Attorney's Office, to report the removal of the Children from California. Stafford, and other California authorities, conducted a thorough investigation of Jensen's allegations. By letter dated July 15, 2003, Barbara Creig of the Office of Children's Issues at the United States Department of State sent Stafford copies of the NZ Access Order and the CA Registration Order. Creig informed Stafford that she was the New Zealand Case Officer for the United States Central Authority for the Hague Abduction Convention and opined that the NZ Access Order was authentic and that Olagues violated that order by removing the Children from California. On July 15, 2003, an employee of the Child Abduction Unit of the Santa Clara District Attorney's Office confirmed to Stafford that the NZ Acess Order had been registered in Santa Clara and sent Stafford copies of the NZ Access Order and CA Registration Order.

Jensen informed Stafford that Olagues informed Jensen that the Children would not be returning to Marin County and would never leave Louisiana. On July 18, 2003, Jensen attempted to pick up the Children as planned in California, but Olagues did not show up or produce the Children, who remained in Louisiana. That day, Jensen met with defendants Stafford and Pool. Defendant Pool provided Stafford with a copy of the City of Belvedere police report alleging that Olagues violated the NZ Access Order, CA Registration Order, and the Hague Convention. Also, Jensen supplied Stafford with an order (the "Interpol Order") from the International Criminal Police Organization, Interpol, that prevented the Children's removal from New Zealand except for the July 2, 2003 two-week visitation period.

On July 21, 2003, Jensen telephoned Olagues in Louisiana from the Marin County District Attorney's Office. Unbeknownst to Olagues, their conversation was recorded. Olagues admitted that he had broken his promise not to remove the Children from California and informed Jensen that he would not return the Children to her. Jensen would "have to force

them out of here one way or another," Olagues said. Later that day, Stafford called the Jefferson Parish Assistant District Attorney David Wolf, who informed her that Olagues had not filed any "good cause report" and that Wolf's office had no record of Olagues receiving custody.

Also on July 21, 2003, Deputy District Attorney Leon Kousharian filed an application with the Marin County Superior Court for a temporary order giving Marin County and Jensen physical and legal custody of the Children. Because Olagues had "fled the jurisdiction with the children," Kousharian requested that Olagues not be served with the order prior to the removal of the Children and arrest of Olagues pursuant to California Penal Code § 278.5. Later that day, the Marin County Superior Court issued an order to show cause and temporary restraining order (the "CA Temporary Restraining Order") granting Stafford and Jensen temporary custody of the Children and Stafford the Marin County District Attorney's Office authority to "facilitate the return of the minor child [sic] to the jurisdiction of the Court pending further hearings."

On July 22, 2003, the Marin County Superior Court issued a warrant (the "CA Arrest Warrant") for the arrest of Olagues for felony parental kidnapping pursuant to California Penal Code § 278.5. Defendant Pool of the City of Belvedere Police Department traveled to Louisiana in possession of that warrant to work with the Jefferson Parish Sheriff's Office to arrest Olagues. Stafford accompanied Pool with the aim of taking custody of the Children and returning them to California.

Defendant Wolf filed a Motion for Temporary Custody for the Purposes of Transportation in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, in compliance with California Family Code §§ 3131–3134.5, on July 23, 2003.

Later that day, a Jefferson Parish Judge entered an order (the "LA Executory Order") making the CA Temporary Restraining Order executory and placing the Children in Stafford's custody for purposes of transporting the children back to Marin county.

On July 23, 2003, California and Louisiana law enforcement authorities, in a collaborative effort, located the Children in Jefferson Parish. Louisiana officers removed the children from plaintiff Olagues' physical custody. Olagues was arrested that same day by Jefferson Parish deputies and imprisoned in Gretna, Louisiana. Immediately after Olagues' arrest, the Children were transferred from Louisiana to California in Stafford's custody.

Olagues was released on bail on July 29, 2003. After his release, Olagues participated by telephone in a hearing before the Marin County Superior Court to determine whether the CA Temporary Restraining Order would be set aside. That court held thereafter that the CA Temporary Restraining Order "should be set aside and the children should be returned to whom ever [sic] has custody." Thereafter, Jensen and the Children returned to New Zealand.

An extradition hearing was scheduled for August 20, 2003, and subsequently continued to until October 15, 2003. On or around September 15, 2003, Olagues was again jailed for custody decree violation, serving three more days in the Gretna jail. On October 15, 2003, the California's attempt to extradite was withdrawn.

On December 4, 2004, plaintiff Olagues filed the 42 U.S.C. § 1983 Case. He later filed the Hague Convention Case on January 22, 2004. Noting that the cases are related, the Court signed an Order (Rec. Doc. 44) consolidating the cases on March 15, 2004. The aforementioned motions to

dismiss were filed between February 10, 2004 and February 26, 2004. All defendants except Jefferson Parish Assistant District Attorney David Wolf aver that this Court lacks personal jurisdiction over them because of the paucity of contacts with Louisiana. The Court agrees and gives reasons below.

## II. LEGAL STANDARD

In the context of a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994); *see also DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270 (5th Cir.1983); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985). As the Fifth Circuit explained in *Thompson:* "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a *prima facie* case for personal jurisdiction has been established." *Thompson,* 755 F.2d at 1165 (citing *DeMelo,* 711 F.2d at 1270–71); *see also Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784 (5th Cir.1990). In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of . . . recognized [discovery] methods." *Id.*

The exercise of personal jurisdiction involves a two-pronged inquiry. A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.,* 9 F.3d 415, 418 (5th Cir.1993); *see also Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 786 (5th Cir. 1990).

As to the initial prong, the Louisiana Long Arm Statute, La.Rev.Stat. § 13:3201, provides that a court may exercise jurisdiction over a nonresident defendant to the full extent provided by the Due Process Clause of the Constitution. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 786 (5th Cir.1990); *see also* La.Rev.Stat. 13:3201(B). The relevant portion of that statute states:

> [A] court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

La.Rev.Stat. § 13:3201(b). Because the Louisiana Long Arm Statute extends personal jurisdiction over non-residents to the same limits allowed by federal due process, the two-pronged inquiry as to whether the Court can exercise personal jurisdiction essentially collapses into one issue: due process.

The latter, instructive prong of the personal jurisdiction inquiry requires that jurisdiction satisfy the due process standards of the Fourteenth Amendment. Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum which results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 474–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *C & H Transportation Co., Inc. v. Jensen and Reynolds Constr. Co.,* 719 F.2d 1267, 1269 (5th Cir.1983). The Due Process

Clause ensures that persons have "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

To establish minimum contacts, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *World–Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum make it reasonable to require the defendant to defend the particular suit in that forum. *Shaffer*, 433 U.S. at 203, 97 S.Ct. 2569.

With respect to the minimum contacts analysis, two types of in personam jurisdiction may be exercised over a nonresident defendant: (1) specific and (2) general. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum, and those contacts meet the due process standard. *Ruston Gas*, 9 F.3d at 418–19. "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). As stated in *Ruston Gas Turbines, Inc. v. Donaldson Co.,*:

The "minimum contacts" prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant "purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protection of its laws."

9 F.3d 415, 419 (5th Cir.1993). Indeed, "[a] single act, by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Id.* at 417; *see also Endotech USA v. Biocompatibles International, PLC*, 2000 WL 1594086 (E.D.La.2000). Where there is intentional and allegedly tortious actions expressly aimed at Louisiana, the tortfeasor must "reasonably anticipate being haled in court there." *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (citations omitted). General jurisdiction, on the other hand, may be found when the claim is unrelated to the nonresident's contacts with the forum but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.*

## III. ANALYSIS

This Court has neither general nor specific personal jurisdiction over defendants Jensen, Pool, the City of Belvedere, Stafford, Kousharian, Bruce, or Marin County. The aforementioned defendants have not purposefully established minimum contacts with Louisiana such that they may reasonably anticipate being haled into court here. Thus, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) is appropriate.

■ General jurisdiction requires that defendants' contacts with the forum are "continuous and systematic." *Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. 1868. Such contacts are clearly lacking here as to all defendants except Jefferson Parish Assistant District Attorney Wolf. Besides Wolf, the only defendants who have entered Louisiana are Jensen, Pool, and Stafford, all of whom lack "continuous and systematic" contacts with the forum.

Defendant Jensen is a Danish citizen and New Zealand resident who has never lived in Louisiana. Other than three vacation trips to Louisiana, the most recent of which occurring in 1995, Jensen has no personal contacts with the forum.

Defendant Pool is a citizen and resident of California who has never resided in Louisiana. He does not conduct business in Louisiana and has no bank accounts or other tangible personal or real property in Louisiana. His sole relationship with the forum appears to be his involvement in plaintiff Olagues' arrest.

Pool's employer, the City of Belvedere Police Department, does not have any offices or facilities in Louisiana. It has no mailing address or telephone listing in Louisiana. The City of Belvedere does not regularly conduct any training or supervision of its officers in Louisiana. It's only activity in this forum seems to be the presence of its employee, Pool, for the purpose of aiding in Olagues' arrest.

Likewise, Marin County and its employees-defendants Stafford, Kousharian, and Bruce-lack "continuous and systematic" contacts with this forum. All are residents of California. Kousharian and Bruce never physically entered Louisiana. Stafford's solitary trip into the forum, and only contact with Louisiana, arose out of the Jensen/ Olagues custody controversy.

The Court finds it overwhelmingly apparent that plaintiff has failed to show "continuous and systematic" contacts with Louisiana by defendants Jensen, Pool, Stafford, Kousharian, Bruce, Marin County, and City of Belvedere. Only defendants Jensen, Pool, and Stafford have ever physically entered the forum and each has done so only in isolated instances. No defendant has conducted business here regularly. Thus, this Court holds that general personal jurisdiction is lacking here as to all defendants except Assistant District Attorney Wolf.

■ Likewise, plaintiff Olagues has failed to meet his burden of showing minimum contacts sufficient to justify specific personal jurisdiction over defendants Jensen, Pool, the City of Belvedere, Stafford, Kousharian, Bruce, or Marin County.

The gravamen of Olagues' Complaint is that defendants collaborated to arrest him and seize his children without legal justification. The basis for plaintiff's argument in favor of specific personal jurisdiction over those defendants is that their collaboration constituted a tortious act that caused injury within the forum. In support of this argument, Olagues relies upon *Guidry v. U.S. Tobacco*, 188 F.3d 619 (5th Cir.1999). In *Guidry*, the 5th Circuit held:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury

within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasioffenses.

*Id.* at 628. Citing the Supreme Court in *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the *Guidry* court held that even an act done outside the forum state with consequences inside the state will suffice as a basis for specific personal jurisdiction if that act's effects were "intended or highly likely to follow from the nonresident defendant's conduct." *Guidry,* 188 F.3d at 628. Pointing out that both his arrest and his children's seizure occurred in Louisiana, plaintiff Olagues contends that defendants acted in concert to commit an intentional tort against plaintiff, thereby conferring personal jurisdiction under *Calder* and *Guidry.* The Court disagrees.

Olagues' argument in favor of personal jurisdiction does not withstand Due Process scrutiny. Plaintiff fails to show that defendants have purposefully availed themselves of the benefits and protections of the forum state. Furthermore, Olagues has neglected to demonstrate that any defendant acted in a manner that indicated an intention to cause plaintiff tortious injury. Rather, any injuries Olagues may have suffered as a consequence of his arrest or the Children's seizure resulted from his own unlawful taking of the Children from California in violation of numerous court orders.

The activities of defendants that Olagues cites as evidence of contacts with Louisiana are merely the result of plaintiff's unilateral action of taking the Children from the court-ordered custodial venue in California to his home in Louisiana. "As such they do not constitute the purposeful availment by the defendant of the protections and benefits of the laws of the State of Louisiana." *We're Talkin' Mardi Gras, LLC v. Davis,* 192 F.Supp.2d 635, 640 (E.D.La.2002); *see also Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. 1228. Indeed, all actions taken in or pertaining to Louisiana, in an attempt to recover the Children and arrest Olagues pursuant to California Penal Code § 278.5, rest on nothing more than the "mere fortuity" that Olagues happened to be a resident of Louisiana and happened to choose that destination for the Children. *We're Talkin' Mardi Gras,* 192 F.Supp.2d at 640; *see also St. Martin & Mahoney v. Diversified Aircraft Holdings, Ltd.,* 934 F.Supp. 200, 203 n. 4, 204–05 (E.D.La.1996). Jensen and the California defendants would have taken similar measures in any other state in which Olagues had illegally taken the Children.

Olagues bases personal jurisdiction on the intentional tort doctrine of *Calder* and its progeny, yet he fails to demonstrate that any defendant directed an intentional tort toward Louisiana. Plaintiff fails to even make a *prima facie* case in this regard. Upon learning of Olagues' violation of the NZ Custody Order and NZ Access Order by removing the Children from California and keeping the Children beyond the allotted two weeks, defendant Jensen contacted certain California authorities and officials named here as defendants. Defendants Marin County, City of Belvedere, Pool, Stafford, Kousharian, and Bruce took appropriate action to enforce the pertinent court orders. In doing so, those defendants relied upon Jensen's representations, the NZ Access Order, the CA Registration Order, the Interpol Order, and verifying representations from Barbara Creig of the Office of Children's Issues at the U.S. Department of State. De-

fendants were also privy to the recorded telephone statements of Olagues indicating that he would not return the Children to Jensen pursuant to their agreement and the court orders.

In addition to obtaining ample information supporting the validity of Jensen's claims, defendants took appropriate measures in arranging for the seizure of the Children and arrest of Olagues. Unlike plaintiff, they did not transport the Children beyond state lines without prior authorization by the proper court. Rather, defendants obtained both an arrest warrant and a temporary restraining order giving defendants custody of the children in California Courts before taking action. They also cooperated with Louisiana authorities in obtaining a Louisiana court order making the CA Temporary Restraining Order executory. Finally, defendants sat by while allowing Louisiana authorities to arrest Olagues and seize the Children pursuant to a valid Louisiana warrant. In short, the California authorities acted appropriately and committed no intentional tort in handling the Jensen/Olagues custody case.

In conclusion, defendants Jensen, Pool, Stafford, Kousharian, Bruce, Marin County, and City of Belvedere lack "continuous and systematic" contacts with the forum sufficient to merit general personal jurisdiction as well as minimum contacts with Louisiana adequate to confer specific jurisdiction. Specifically, plaintiff Olagues has failed to adequately support his personal jurisdiction arguments on *Calder/Guidry* intentional tort grounds. The moving defendants' activities do not meet the Due Process standard of purposeful availment. Thus, for the foregoing reasons,

**IT IS ORDERED** that, in Civil Action No. 03–3428 (the "42 U.S.C. § 1983 Case"), the motions to dismiss filed by defendants Christopher Pool (Rec.Doc. 23), City of Belvedere (Rec.Doc. 23), Patricia Stafford (Rec.Doc. 26), Leon Kousharian (Rec.Doc. 26), Otis Bruce (Rec.Doc. 26), Marin County (Rec.Doc. 26), and Charlotte Jensen (Rec.Doc. 29) are hereby **GRANTED.**

**IT IS FURTHER ORDERED** that all claims in Civil Action No. 03–3428 against defendants Christopher Pool, City of Belvedere, Patricia Stafford, Leon Kousharian, Otis Bruce, Marin County, and Charlotte Jensen are hereby **DISMISSED.**

Additionally,

**IT IS ORDERED** that the motion to dismiss filed by defendant Charlotte Jensen (Rec.Doc. 13) in Civil Action No. 04–195 (the "Hague Convention Case") is also hereby **GRANTED.**

**IT IS FURTHER ORDERED** that all claims against defendant Charlotte Jensen in Civil Action No. 04–195 are hereby **DISMISSED.** Civil Action No. 04–195 is therefore DISMISSED in its entirety.

Finally, considering plaintiff's *ex parte* motion to dismiss (Rec.Doc. 50),

**IT IS ORDERED** that the motion to dismiss filed by defendant Peggy Bennington (Rec.Doc. 20) in Civil Action No. 03–3428 is hereby **DENIED AS MOOT.** Likewise, the motions to dismiss filed by defendants Pool (Rec.Doc. 7) and Stafford (Rec. Doc. 8) in Civil Action No. 04–195 are also **DENIED AS MOOT.**